# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**Paul L. Fritch,**                           )
                                              )
     **Plaintiff,**        )
                                              )
     **v.**               )    **Civil No. 15-cv-00430 (APM)**
                                              )
**U.S. Department of State,**                 )
                                              )
     **Defendant.**        )
_____)

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Paul L. Fritch is a career Foreign Service Officer employed since 1991 with Defendant U.S. Department of State ("State"). In the summer of 2007, Plaintiff was "seconded" from State to serve as the Director of the Office of the Secretary General for the Organization for Security and Cooperation in Europe ("OSCE"). To effectuate the transition to his new position, Plaintiff was "separated and transferred" from State to the OSCE. Plaintiff remained at the OSCE until the spring of 2012, whereupon he returned to State.

Plaintiff's secondment, however, resulted in the loss of critical benefits that he otherwise would have enjoyed had he continued working at State. Most significantly, his years at the OSCE did not count towards promotion eligibility within State. He also did not accrue certain types of leave time and was not permitted to make contributions to his Thrift Savings Plan. Plaintiff also paid more than $140,000 for his own housing while living in Europe.

After Plaintiff returned to State, he filed a grievance challenging these adverse impacts. State rejected his grievance, finding that Plaintiff's classification as "separated and transferred"

from the agency rendered him ineligible for those benefits. Plaintiff appealed that decision to the Foreign Service Grievance Board ("FSGB" or "the Board"). The FSGB affirmed the agency's denial of his grievance and subsequently rejected Plaintiff's request for reconsideration, in part because it was based on arguments that Plaintiff had not raised during his grievance or his appeal.

Plaintiff brought this suit under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, challenging the FSGB's rulings. His overarching contention is that the denial of benefits was contrary to State's own policies and regulations and thus was an arbitrary and capricious agency action. State defends the FSGB's ruling as rationally based on the record evidence and further asserts that this court lacks jurisdiction to review the Board's refusal to consider arguments raised for the first time on reconsideration. Plaintiff, for his part, counters that the Board in fact has considered arguments raised by other grievants for the first time on reconsideration and that, as a result, its refusal to consider such arguments in his case was arbitrary and capricious.

This matter is before the court on the parties' cross-motions for partial summary judgment. [1] The court concludes that it lacks jurisdiction to review those legal arguments that Plaintiff raised with the FSGB for the first time in his request for reconsideration. Additionally, the court finds that the Board did not arbitrarily and capriciously apply its own discretionary procedural rule— namely, that it will not consider legal arguments raised for the first time on requests for reconsideration—to Plaintiff's request. Finally, the court concludes that the Board's decision denying Plaintiff's appeal on the merits was not arbitrary and capricious. Accordingly, the court

---

[1] This matter is before the court on *partial* motions for summary judgment because the parties' motions concern only Counts I and II of Plaintiff's four-count Amended Complaint. After the FSGB affirmed the denial of Plaintiff's initial grievance, Plaintiff filed a second grievance with State. Counts I and II relate to the denial of Plaintiff's initial grievance. Counts III and IV, on the other hand, concern the denial of Plaintiff's second grievance. *See* Am. Compl., ECF No. 21, ¶¶ 32-38, 44-49. The parties agreed that their initial round of briefing would address only Counts I and II. *See* Joint Status Report, ECF No. 22. Therefore, Counts III and IV, and any issues pertaining to the second grievance, are not presently before the court.

grants Defendant's Motion for Partial Summary Judgment and denies Plaintiff's Cross-Motion for Partial Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    *Plaintiff's Transfer to the Organization for Security and Cooperation in Europe*

Plaintiff is a career Foreign Service Officer employed since 1991 by Defendant U.S. Department of State ("State"). Def.'s Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 24 [hereinafter Def.'s Mot.], at 2; Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J., ECF No. 31 [hereinafter Pl.'s Opp'n], at 5.  In April 2007, State's Bureau of Human Resources circulated a Vacancy Announcement soliciting applications from agency employees interested in serving as Director of the Office of the Secretary General for the Organization for Security and Cooperation in Europe ("OSCE").  Def.'s Mot. at 2; Pl.'s Opp'n at 7.  Plaintiff submitted an application and, on May 7, 2007, the OSCE selected him for the position.   Def.'s Mot. at 2–3; Pl.'s Opp'n at 7. State approved Plaintiff's transfer and agreed to "second" him to the OSCE for two years with the possibility of a one-year extension.  Def.'s Mot. at 3; Pl.'s Opp'n at 7.

Plaintiff and State's Human Resources staff worked together to effectuate his transfer to the OSCE.  Def.'s Mot. at 3.  On July 21, 2007, State officially transferred Plaintiff to the OSCE pursuant to a "separation and transfer" agreement whereby Plaintiff was formally separated from State while working at the OSCE but retained the right to resume his employment at the conclusion of his secondment.  Def.'s Mot. at 3; Pl.'s Opp'n at 7–8.  Importantly, Plaintiff was not "detailed" to work at OSCE.  Unlike a separated-and-transferred employee, a detailed State employee remains employed by State while working at another organization and continues to accrue benefits, including promotion eligibility, as if he was working at State.  Def.'s Mot. at 3.  On the other hand,

employees that are separated and transferred from State, like Plaintiff, are no longer employed by State, but retain unilateral reemployment rights upon the conclusion of their tenure with the secondment organization. *Id.*

Shortly after he started work at the OSCE, Plaintiff repeatedly attempted to confirm that, despite being separated and transferred, he remained eligible for promotion consideration. Def.'s Mot. at 5. Plaintiff asserted that he remained eligible for promotion because he received an "Information Sheet" with his separation and transfer agreement, which stated that "[State] employees *are entitled* to be considered, while employed by the OSCE, [for promotions] in accordance with the governing precepts." Def.'s Mot. at 3 (emphasis added). State ultimately informed Plaintiff, however, that its internal policies—known as the Governing Precepts— disqualified him from promotion consideration while he was working at the OSCE. *Id.*; Pl.'s Opp'n at 8. Despite being fully aware of State's position, Plaintiff twice extended his secondment at the OSCE before resuming work at State in June 2012. Def.'s Mot. at 5.

### 2.   *Plaintiff's Agency-Level Grievance*

Upon returning to State, Plaintiff, proceeding *pro se*, filed an agency-level grievance challenging the loss of benefits during his time at the OSCE.[2] *Id.* at 6; Pl.'s Opp'n. at 16; Admin. Rec. Part 3, ECF No. 35-4 [hereinafter A.R. Pt. 3], at 1–19. Specifically, Plaintiff asserted before the agency that he had remained eligible for benefits, including promotion eligibility, while he worked at the OSCE because:

- "[T]he Separation Agreement was a binding contract that imposed obligations on both parties" and that the Information Sheet, as incorporated into the Separation

---

[2] Under State's policies, Plaintiff could not challenge the loss of benefits while he remained separated from State. Def.'s Mot. at 6. Accordingly, when Plaintiff returned to State in 2012, he timely filed a grievance. *Id.*

Agreement, contained language "guarantee[ing] . . . promotion eligibility," which superseded the Governing Precepts;

- State had "broad discretion to treat any given assignment as a 'detail' or a 'transfer'" and that the "final decision to opt for a separation/transfer was taken with the sole purpose of processing the assignment as quickly and efficiently as possible";

- State had not, as it contended, made a "conscious policy choice" to "exclud[e] . . . [transferred] employees from consideration [for] promotion" in order to discourage State employees from "serving in lengthy assignments with international organizations." To the contrary, State actually "actively encourage[d] qualified employees to serve in key positions within [international organizations], and lobbie[d] on behalf [of its employees for those positions]";

- State could have "resolved" the "contradiction between [the] Separation Agreement and the [Governing Precepts]" in order to "mitigate" Plaintiff's damages; and

- Plaintiff could "reasonably have expected to be competitive for a promotion" during his time at OSCE.

*See* A.R. Pt. 3 at 25, 28–31.

State denied Plaintiff's grievance on November 20, 2016. Def.'s Mot at 6. With respect to Plaintiff's main argument, the agency concluded that the Information Sheet did not create any contractual obligations between State and Plaintiff, much less an obligation negating the Governing Precepts' clear exclusion of Plaintiff from promotion consideration. A.R. Pt. 3 at 197–201. The agency also rejected Plaintiff's other arguments. *See id.*

### 3.    *Plaintiff's Appeal to the Foreign Services Grievance Board*

On January 10, 2013, Plaintiff, continuing to proceed *pro se*, appealed State's decision to the Foreign Services Grievance Board ("FSGB" or "the Board"). Def.'s Mot. at 7; Pl.'s Opp'n at 17; A.R. Pt. 3 at 1–32. In his appeal, Plaintiff reiterated and expanded upon the arguments outlined above. He also, for the first time, argued that:

- The paperwork effectuating his transfer—a form SF-50—actually reflected that he had been assigned not to the OSCE, but to the Multinational Force & Observers ("MFO"), an independent international organization with peacekeeping

responsibilities in the Sinai Peninsula. According to Plaintiff, MFO members "do remain promotion-eligible while in separation/transfer (secondment) status," and that, as a result, the Department had purposefully "transferred" him to the MFO, even though he technically worked at the OSCE, in order to ensure that he was assigned to a "status explicitly eligible for promotion consideration under [the Governing Precepts]"; and

- The "Grievance Staff, in its analysis of the case, disregarded duly submitted evidence that did not conform to its own 'theory of the case' . . . flatly misrepresented objective, easily verifiable facts critical to a fair, unbiased resolution of the case . . . sought *any* interpretation . . . that might justify the denial of the grievance . . . [and] thus failed to adhere to basic principles of due process."

*See* A.R. Pt. 3 at 15–17.

While on appeal, Plaintiff received certain disclosures from the agency that prompted him to file a Supplemental Submission to the Board on February 28, 2013. *See* Def.'s Mot. at 7–8; Pl.'s Opp'n at 17; Admin. Rec. Pt. 4, ECF No. 36 [hereinafter A.R. Pt. 4], at 45–58. In his Supplemental Submission, Plaintiff advanced the following additional contentions:

- A "newly disclosed" Standard Operating Procedure (SOP A-10) "clearly indicate[d] that assignments of [employees] to the OSCE should be processed as details . . . rather than separations/transfers" and that, as a result, State's decision to separate and transfer Plaintiff "was not merely a discretionary error, but rather a clear violation of then-applicable Department policy"; and

- State "lacked the legal authority to process [his] assignment as a separation/transfer" under 5 C.F.R. § 352.304 because "the OSCE was not included on the Department's 'List of International Organizations'" approved for assignment of federal employees. Under that regulation, Plaintiff argued, State employees could be separated and transferred only to organizations designated on that list and that all other employee transfer arrangements, including transfers to the OSCE, were required to be processed as details.

*See* A.R. Pt. 4 at 47–48 (emphasis omitted).

On March 19, 2015, the FSGB denied Plaintiff's appeal. Def.'s Mot at 8; Pl.'s Opp'n at 17; Admin. Rec. Pt. 6, ECF No. 38 [hereinafter A.R. Pt. 6], at 43–78. In its decision, the FSGB closely examined Plaintiff's arguments and found that State had made several "regrettable and sloppy" errors during the grievance process. Namely, State had mistakenly determined that it was

standard protocol to separate and transfer employees to organizations like the OSCE, when no such standard protocol existed, and that the Information Sheet was not incorporated into the Separation Agreement, when in fact it was incorporated by reference. *See* A.R. Pt. 6 at 73–74. Notwithstanding these deficiencies, the Board found that State had not acted contrary to applicable regulations or policy either in effectuating Plaintiff's transfer or by failing to consider him for promotion during his tenure at the OSCE. Specifically, the Board ruled that:

- The Information Sheet did not give rise to any contractual obligations between Plaintiff and State;

- State did not violate its own internal policy which, as demonstrated by the Governing Precepts, dictated that federal employees assigned to international organizations other than the MFO were ineligible for promotion consideration;

- The fact that Plaintiff's transfer paperwork indicated that he had been assigned to the MFO, instead of the OSCE, was an administrative error and did not evince an intent to afford Plaintiff the same benefits as those employees seconded to the MFO;

- State had legal authority under 5 C.F.R. § 352.304 to transfer Plaintiff to the OSCE, even though the OSCE had not yet been formally designated as an eligible foreign organization, because State could have properly designated the OSCE—and in fact later did properly designate it—as a qualifying organization under the regulations; and,

- The grievance-level errors did not establish a "nefarious motive" sufficient to constitute a due process violation.

*See id.* at 64–77.

### 4. *Plaintiff's Request for Reconsideration*

Plaintiff then filed a Request for Reconsideration with the FSGB on April 16, 2014. Def.'s Mot. at 9; Pl.'s Opp'n at 17; A.R. Pt. 6 at 87–103. Notably, Plaintiff retained a lawyer to file his Request for Reconsideration. A.R. Pt. 6 at 104.

With the assistance of counsel, Plaintiff argued that the Board should reconsider its decision because it had (1) failed to adequately address whether State had violated its own Standard

Operating Procedure—SOP A-10—by separating and transferring Plaintiff to the OSCE, and (2) given "undue weight to opinions" of staff when considering whether State had intentionally transferred Plaintiff to MFO status such that he could remain eligible for promotion consideration. *Id* at 100–103.

In addition to challenging the Board's disposition of arguments previously raised, Plaintiff raised a number of new arguments for the Board's consideration. They included that:

- The *McDonnell Douglas* burden-shifting framework applied to his appeal and, as a result, the Board committed legal error by refusing to shift the evidentiary burden from the Plaintiff to State in order to address "the gaps in the Department's evidence";

- State had cited, and the FSGB had applied, the wrong version of 5 C.F.R. § 352.304 when analyzing Plaintiff's claim that State lacked the legal authority to effectuate his transfer to a non-designated foreign organization. According to Plaintiff, the FSGB erroneously applied the version of section 352.304 in effect at the time of the appeal in 2013, as opposed to the version in effect when Plaintiff was separated and transferred to OSCE in 2007. Under the 2007 version of section 352.304, Plaintiff argued, only the Office of Personnel Management—and not State itself—could provide the "necessary" approval for an employee "secondment to a non-listed organization," such as the OSCE. Because the Office of Personnel Management had not approved Plaintiff's transfer to the OSCE, his assignment only could have been properly effectuated as a detail, thus preserving his promotion eligibility; and

- State's decision denying him promotion consideration conflicted with 5 C.F.R. § 352.314(a), which provides that "[e]ach agency shall consider each employee detailed or transferred to an international organization for all promotions for which he would be considered were he not absent." Plaintiff argued that section 352.314 had controlling force over the Governing Precepts, upon which State erroneously had relied to deny Plaintiff promotion consideration.

*See id.* at 87–88, 90–93, 94, 97 (emphasis omitted).

The FSGB denied Plaintiff's Request for Reconsideration in its entirety. With respect to the arguments that Plaintiff previously had raised before the Board, the Board concluded that it had adequately considered the merits of those arguments and that Plaintiff had offered no valid basis—either through the presentation of new evidence or demonstration of a change in

8

circumstances—to warrant reconsideration.   Def.'s Mot. at 10; Pl.'s Opp'n at 23; A.R. Pt. 6, at 268–278.  The Board also refused to consider the three arguments that Plaintiff raised for the first time in his Request for Reconsideration because Plaintiff "could have, but failed to raise [those arguments] earl[ier] in his appeal either at the agency level or before [the Board]."  A.R. Pt. 6 at 273.

### B.   Procedural Background

On March 24, 2015, Plaintiff filed suit in this court challenging the FSGB's rulings.   He claimed that the FSGB's decisions affirming the denial of his grievance and denying his Request for Reconsideration were arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq*. *See* Am. Compl., ¶¶ 39–46.  The parties then filed motions for partial summary judgment based solely on the administrative record, *see supra*, n.1, to which the court now turns.

## III.   LEGAL STANDARD

Cross-motions for summary judgment ordinarily are reviewed under the standard set forth in Federal Rule of Civil Procedure 56, which requires a court to grant summary judgment when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases, such as this one, that involve the review of a final agency action, the Rule 56 standard does not apply.  *See Stuttering Found. of Amer. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  Instead, "the district judge sits as an appellate tribunal" and "[t]he 'entire case' on review is a question of law."  *Am. Biosci. Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citing cases). "[T]he court's review is limited to the administrative record," *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)), and its role

is limited to "determin[ing] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did," *see Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal quotation marks omitted).

Plaintiff argues that the FSGB's decisions were "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A). Application of the "arbitrary and capricious" standard requires courts to determine whether the action at issue was based on "reasoned analysis." *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56–57 (1983). Generally, an agency has engaged in reasoned analysis when the administrative record indicates it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Where, however, the administrative record indicates that an agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [made a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," it has acted in an arbitrary and capricious manner. *Id.* This standard is not "particularly demanding," *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993), and a reviewing court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). A court, however, should not "supply a reasoned basis for the agency's action that the agency itself has not given," *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

## IV.   DISCUSSION

As factual recitation above shows, Plaintiff raised a raft of arguments before State and the FSGB in support of his central contention that the agency wrongly deprived him of promotion consideration and other benefits while he was assigned to the OSCE. Plaintiff in this case has pared his arguments down to five.

First, Plaintiff contends that the Board applied the wrong version of 5 C.F.R. § 352.304 when ruling that State had the legal authority to assign him to the OSCE by separation and transfer without the prior approval of the Office of Personnel Management. *See* Pl.'s Opp'n at 29–33. Instead of applying the version in effect when the transfer occurred, the Board wrongly applied the version in effect at the time of Plaintiff's appeal. Second, he claims that the Board's decision conflicts with 5 C.F.R. § 352.314, which requires agencies to "consider each employee detailed or transferred to an international organization for all promotions for which he would be considered were he not absent." *See id*. at 34–37. Third, he argues that the agency's admitted error on the SF-50 form of assigning him to the Multinational Force & Observers ("MFO"), instead of the OSCE, "shift[ed] the burden of proof to the Department" to show that it would have taken the same action with respect to Plaintiff even in the absence of the error. *See id*. at 37–40. Fourth, Plaintiff contends that the Board's decision not to address his Request for Reconsideration, in which he argued for the first time that the Board had applied the incorrect regulation, was inconsistent with its prior practice to consider such arguments. *See id*. at 46–50. And, fifth, he challenges as arbitrary and capricious the Board's conclusion that the SF-50's erroneous designation of Plaintiff to the MFO was an administrative error which did not demonstrate, as

Plaintiff had argued, that State actually intended to detail him, rather than separate and transfer him, to the OSCE. *See id.* at 40–43.

Defendant asserts that all but one of these arguments is nonreviewable. Specifically, Defendant contends that the court lacks jurisdiction to review the Board's discretionary decision not to grant Plaintiff's Request for Reconsideration because Plaintiff could have raised the arguments therein in his initial appeal. *See* Def.'s Mot. at 18–21; Def.'s Reply in Supp. of Partial Mot. for Summ. J., ECF No. 33 [hereinafter Def.'s Reply], at 8–11. Thus, according to Defendant, the court cannot review Plaintiff's first four arguments. *Id.* As to Plaintiff's fifth argument—that the Board's decision with respect to the SF-50 was arbitrary and capricious—Defendant defends that ruling as rationally based on the evidence presented. Def.'s Mot. at 14–16; Def.'s Reply at 8–11. The court has carefully reviewed the record and agrees with Defendant that Plaintiff's arguments are without merit.

### A.     Plaintiff's First Three Arguments Are Not Reviewable

#### 1.     *The Court Lacks Jurisdiction to Review Those Arguments that the FSGB Determined Were Raised for the First Time on Reconsideration*

Our Court of Appeals has made clear that: "An agency's denial of a petition, or a request, for reconsideration is not itself subject to judicial review if the petition alleges only material error in the agency's original decision." *Sendra Corp. v. Magaw*, 111 F.3d 162, 166 (D.C. Cir. 1997) (internal quotation marks omitted); *accord Schoenbohm v. FCC*, 204 F.3d 243, 245 (D.C. Cir. 2000) (holding that the court lacks jurisdiction to review an agency's denial of a petition for reconsideration "unless the request for reconsideration was based on new evidence or changed circumstances"); *Canady v. SEC*, 230 F.3d 362, 364 (D.C. Cir. 2000) ("Denial of agency reconsideration is generally nonreviewable unless the request for reconsideration was based on new evidence or changed circumstances." (internal quotation marks omitted)). That rule is based

on the Supreme Court's decision in *ICC v. Brotherhood of Locomotive Engineers (BLE)*, in which the Court held that, "where a party petitions an agency for reconsideration on the ground of material error, i.e., on the same record that was before the agency when it rendered its original decision, an order which merely denies rehearing of . . . [the prior] order is not itself reviewable." 482 U.S. 270, 280 (1987). "That is so, the Court said, even if the agency order refusing reconsideration discussed the merits of the [petitioners'] claims at length, as long as the agency's formal disposition is to deny reconsideration, and . . . it makes no alteration in the underlying order." *Vill. of Barrington, III v. Surface Transp. Bd.*, 758 F.3d 326, 328 (D.C. Cir. 2014) (quoting *BLE*, 482 U.S. at 280). Nonreviewability in this context means that the court lacks jurisdiction. *See Entravision Holdings, LLC v. FCC*, 202 F.3d 311, 312 n.** (D.C. Cir. 2000).

It is clear to this court, as it was to the Board, that Plaintiff raised the first three arguments identified above—which concern (1) the application of 5 C.F.R. § 352.304, (2) the application of 5 C.F.R. § 352.314, and (3) shifting the burden of proof to State because of certain errors—for the first time in his Request for Reconsideration. There is no mention whatsoever of those contentions in either the agency or appellate record. And, aside from refusing to consider those arguments, the Board's order denying reconsideration simply reaffirmed its original ruling without modification, *see* A.R. Pt. 6 at 274, 277, and is thus "not itself reviewable." *See BLE*, 482 U.S. at 280. Accordingly, the court lacks jurisdiction to consider those arguments.

Plaintiff attempts to avoid the jurisdictional bar articulated in *BLE* and *Schoenbohm* by arguing that "[t]he principle at issue in *Schoenbohm*—rejecting judicial review under the APA following a denial of reconsideration—has never been applied after the FSGB denies reconsideration of a request citing legal error." Pl.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 34 [hereinafter Pl.'s Reply], at 8. True, as Plaintiff contends, there appears to be no

appellate decision from this circuit squarely on point. However, district courts are regularly tasked with applying existing precedents to new contexts. Here, the court holds that the logic of *Schoenbohm* applies with equal force to preclude review of the FSGB's decision in this case as it did to preclude agency review in *Schoenbohm* itself.

The Court of Appeals has, at least indirectly, applied *Schoenbohm* to hold that an FSGB decision denying reconsideration is unreviewable. In *Egan v. United States Agency for International Development*, the Court of Appeals faced the question whether the FSGB's denial of a plaintiff's *second* request for reconsideration was reviewable. *See* 381 F.3d 1 (D.C. Cir. 2014). The court held that it lacked jurisdiction to review plaintiff's challenge because an agency's "'denial of successive requests for reconsideration of the same decision are not'" reviewable. *Id.* at 5 (quoting *Sendra Corp.*, 111 F.3d at 167). Although the court primarily relied on *Sendra Corporation*, it also cited *Schoenbohm* for the principle that "an agency's denial of a request for reconsideration 'is generally nonreviewable unless the request . . . was based on new evidence or changed circumstances.'" *Id.* (quoting *Schoenbohm*, 204 F.3d at 245, 250). Although *Egan* admittedly concerned the FSGB's denial of a second request for reconsideration, whereas this case involves the denial of an initial request, Plaintiff has not articulated any reason why the Court of Appeals would not apply the rule of *Schoebohm* to these circumstances. Accordingly, the court finds that *Schoenbohm* applies equally in this context and forecloses review of the Board's decision to deny requests for reconsideration alleging, as here, material error in the Board's original decision.

Plaintiff also cites two district court cases—*United States Department of State v. Coombs*, 417 F. Supp. 2d 10 (D.D.C. 2006), and *Ehrman v. United States*, 429 F. Supp. 2d 61 (D.D.C. 2006)—to avoid the jurisdictional bar. *See* Pl.'s Reply at 8–10. Plaintiff argues that the courts in

both cases elected to review the Board's decision to deny the plaintiffs' appeals even though the Board had already denied their requests for reconsideration. *Id*. Those cases are inapposite, however. Putting aside the fact that the decision in *Coombs* was subsequently reversed and vacated, neither case concerned, or even addressed beyond mere mention, the FSGB's decision to deny the requests for reconsideration. In fact, the plaintiffs in both cases—unlike Plaintiff here— first raised the arguments before the agency and the Board prior to presenting them to the district court. *See Coombs*, 417 F. Supp. 2d at 12–13; *Ehrman*, 429 F. Supp. 2d at 70. Thus, neither *Coombs* nor *Ehrman* supports Plaintiff's assertion that this court can consider the arguments raised for the first time in his Request for Reconsideration when the FSGB itself declined to do so.

> 2. *Plaintiff Did Not Preserve the Precise Issues He Now Advances Concerning 5 C.F.R. §§ 352.304 and 352.314*

Plaintiff also makes another argument in an effort to preserve review of his first and second arguments. He contends that *Schoenbohm* is inapplicable, because he, in fact, raised the arguments he now advances concerning 5 C.F.R. §§ 352.304 and 352.314 before the Board on appeal, not for the first time in his Request for Reconsideration. *See* Pl.'s Reply at 11–25. The court disagrees.

The Court of Appeals has consistently held that that courts "are bound to adhere to the hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012) (internal quotation marks omitted). This rule "holds special force where, as here, an appeal follows adversarial administrative proceedings in which parties are expected to present issues material to their case. In that setting, the rationale of requiring issue exhaustion is at its greatest[.]" *Wallaesa v. FAA*, 824 F.3d 1071, 1078 (D.C. Cir. 2016) (internal quotation marks omitted).

*Wallaesa* is instructive. There, the plaintiff—an airline passenger—petitioned for review of a sanction that the Federal Aviation Administration ("FAA") had imposed on him arising out of his disruptive and abusive behavior during a flight. *Wallaesa*, 824 F.3d at 1074–76. The plaintiff asserted on appeal that the FAA lacked the authority to regulate the type of non-violent passenger conduct at issue in his case. The Court of Appeals found that the plaintiff had preserved that argument for review because he had asserted before the agency that the regulation at issue "applie[d] to requirements of Pilots and Aircraft to Conform to Safety Standards, [but] not to passengers." *Id.* (internal quotation marks omitted). The court, however, concluded that the plaintiff had failed to preserve "several other issues" he had raised for the first time in his petition for review, including that the regulation at issue was invalid because it was unconstitutionally vague and "promulgated without adequate notice and comment." *Id.* at 1078 n. 5. The court explained: "Raising new *arguments* is one thing—raising new *issues* is entirely another." *Id.* at 1078.

Admittedly, the line separating a preserved new argument from an unpreserved new issue is not always a clear one. The Court of Appeals, however, has offered some guidance. For example, the court has explained that the waiver analysis centers on whether a party raised the "specific argument" presented to the district court, and "not merely the same general legal issue," before the agency. *See Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013). Put another way, there must be a demonstrable "congruity . . . between a party's arguments before an administrative agency and [a federal] court" to support judicial review. *Id.* (internal quotation marks omitted).

Applying *Koretoff*, the court finds that Plaintiff did not raise before the FSGB the issues he now advances in this court concerning the application of 5 C.F.R. §§ 352.304 and 352.314. Thus, the court declines to consider those unpreserved issues.

With respect to section 353.304, Plaintiff describes his argument before the Board as follows: "[W]ith his Supplemental Submission, [Plaintiff] submitted to the Board documents indicating that OSCE had not been added to the list of approved international organizations until *after* his assignment, and that the Department therefore had no legal basis to separate/transfer an employee to the [OSCE]." Pl.'s Reply at 13–14. In denying that argument on appeal, the Board applied the version of section 353.304 that went into effect on December 1, 2008, *after* Plaintiff was assigned to the OSCE. Under the later version of the regulation, State had the authority to transfer an employee to an organization if (a) the organization was one that "the Department of State ha[d] designated as an international organization," or (b) "the organization concerned could [have been] designated as [a covered] international organization" under the relevant statues. 5 C.F.R. §§ 352.304(a), (b) (2008). Plaintiff's argument before the Board, even as he describes, was that the OSCE did not meet either criteria. The Board concluded otherwise, holding that the OSCE qualified as an international organization that "could be" designated under section 352.304(b) and that, as a result, State did have the legal authority to effectuate Plaintiff's transfer at the time. A.R. Pt. 6 at 69–77.

That is not, however, the "specific argument" that Plaintiff raises here. Before this court Plaintiff contends that the FSGB committed error by applying the wrong version of section 352.304. He argues that the Board should have applied the version in effect when his transfer occurred in 2007, instead of the version that was in effect at the time of appeal. Under the earlier version, State lacked the authority to unilaterally determine whether an organization that was not already designated and pre-approved under the regulations nonetheless could have been designated. Instead, it had to—but did not in his case—first obtain the approval of the Office of Personnel Management before transferring any employee to a non-designated organization. *See*

17

5 C.F.R. § 353.304 (2001).  Plaintiff did not, however, raise this "specific argument" before the FSGB.  *Koretoff*, 707 F.3d at 398.  At most, he raised the "same general legal issue"—whether the OSCE was an eligible international organization under section 352.304—before the agency.  *Id.*  But Plaintiff simply never made the argument that he does now before the Board.

The same is true as to his argument concerning section 352.314.  Plaintiff never once even mentioned section 352.314 before the Board.  *See* Pl.'s Reply at 21 (acknowledging that "the Department" raised section 352.314 in response to his Supplemental Submission).  Instead, he generally argued that his transfer agreement required State to consider him for promotion while he worked at the OSCE.  *See id.* at 22 (admitting that he "had argued that the separation/transfer agreement . . . [including] an 'Information Sheet' . . . explicitly stat[ed] that he was eligible for promotion during his assignment to the OSCE").  Again, while Plaintiff may have raised the "general legal issue" of whether State was compelled to consider him for promotion even while separated to the OSCE, he never raised the "specific argument" that State was so compelled by section 352.314.  *See Koretoff*, 707 F.3d at 398.

Accordingly, the court finds that Plaintiff failed to preserve both arguments concerning the application of 5 C.F.R. §§ 352.304 and 352.314 and the court will not consider them now.  *Coburn*, 679 F.3d at 931.

### B.    Plaintiff's Fourth Argument

Plaintiff next argues that the Board's refusal to consider the arguments he raised for the first time on reconsideration was arbitrary and capricious because "the Board failed to reconcile its rejection of [his] regulatory arguments with its treatment of previous reconsideration requests."  Pl.'s Opp'n at 46.  In other words, Plaintiff believes that the Board treated him differently than others who, in similar circumstances, received consideration of their newly raised arguments.

Defendant contends that the Board's decision to apply its discretionary rule to decline review of Plaintiff's Request for Reconsideration is nonreviewable. The court disagrees. Because Plaintiff's argument, strictly speaking, does not assert that the Board committed a "'material error' in [its] original decision," *Sendra Corp.*, 111 F.3d at 166, but rather asserts disparate treatment when compared to its earlier decisions, the court has jurisdiction to review the Board's decision on that narrow ground, *see Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (addressing argument that an agency's decision was "arbitrary and capricious because [the agency] failed to provide a reasoned explanation for departing from precedent").

Plaintiff cites four prior Board decisions that he contends demonstrate that "[t]he Board has not previously rejected allegations of illegality," or a clear error of law, "on motions to reconsider." Pl.'s Opp'n at 47–49. They are: (1) FSGB 2014-007R (Dec. 17, 2014), *see* Pl.'s Opp'n, Ex. C, ECF No. 31-3 [hereinafter 2014-007R]; (2) FSGB 2011-054 (May 30, 2014), *see* Pl.'s Opp'n, Ex. D, ECF No. 31-4 [hereinafter 2011-054]; (3) FSGB No. 2006-11 (Aug. 22, 2016), *see* Pl.'s Opp'n, Ex. E, ECF No. 31-5 [hereinafter 2006-11]; and, (4) FSGB 2002-40 (Sept. 30, 2003), *see* Pl.'s Opp'n, Ex. F., ECF No. 31-6 [hereinafter 2002-040]. Although the Board is not required to "grapple with every last one of its precedents, no matter how distinguishable, . . . [n]ormally, an agency must adhere to its precedents in adjudicating cases before it." *Jicarilla Apache Nation*, 613 F.3d at 1120 (citation omitted). If it does not follow its own precedent, then the Board "must provide an adequate explanation to justify treating similarly situated parties differently." *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005).

The court has reviewed each of the four FSGB decisions cited by Plaintiff and concludes that each is sufficiently distinct from the Board's decision in the instant case. First, FSGB decision

2002-040 simply does not support Plaintiff's assertion of disparate treatment, as the Board in that case also denied the request for reconsideration. *See* 2002-040 at 10. Second, Plaintiff's citation to 2011-054 is similarly unavailing, as there the Board considered only arguments that were raised before the agency and, in fact, explicitly rejected the grievant's attempts to raise new substantive arguments on reconsideration. *See* 2011-054 at 7. Finally, the grievants in the remaining two cases did not ask, as Plaintiff did, for the Board to reconsider its decision on the merits. Rather, in one decision, the Board only reconsidered "the relief aspect of its [earlier] decision," *see* 2014-007R at 3, and in the other, the Board only reconsidered the threshold issue of whether the grievant's claim was timely filed under its regulations, *see* 2006-011 at 4–5. These decisions are not sufficiently similar to Plaintiff's request—that the Board fully reconsider its merits determination based on arguments not previously presented, but available, at the time of appeal— for this court to find that the Board's application of a discretionary rule of review was arbitrary and capricious. Accordingly, the court finds that the Board did not violate the APA by denying Plaintiff's Request for Reconsideration.

## C.      Plaintiff's Fifth Argument

Lastly, the court reaches Plaintiff's fifth and final argument, in which Plaintiff asserts that the Board acted arbitrarily and capriciously by refusing to find, based on the SF-50, that State had intentionally assigned him to the Multinational Force & Observers ("MFO"), instead of the OSCE. *See* Pl.'s Opp'n at 38–39 (arguing that State assigned Fritch to "the MFO, and only the MFO" and that there is no evidence that he was ever formally assigned to the OSCE). Plaintiff argues that the Board's error led it to mistakenly conclude that he was ineligible for promotion consideration. *See id.* at 38 (arguing that employees assigned to the MFO "*are* eligible for promotion during their assignments").

Under the APA, a reviewing court may "hold unlawful and set aside an agency action" it deems to be "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). When analyzing agency action under the "arbitrary and capricious standard," courts must determine whether the action at issue was based on "reasoned analysis." *State Farm*, 463 U.S. at 57; *see also Republican Nat'l Comm. v. Fed. Election Comm'n*, 76 F.3d 400, 407 (D.C. Cir. 1996). Generally, an agency has engaged in such analysis when the administrative record indicates it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43.

The court has reviewed the FSGB's decision and finds that the Board sufficiently considered Plaintiff's argument that, under the SF-50, he was actually assigned to the MFO, and not the OSCE, and that the decision to reject that argument was grounded in a "rational connection between the facts found and the choice made." *Id*. Specifically, the Board found that there was no evidence, other than the erroneous classification itself, establishing that State personnel intended to confer upon Plaintiff those benefits afforded to the MFO staff. *See* A.R. Pt. 6 at 30–31. Furthermore, as the Board held, under the governing regulations, benefits determinations are based on the organization where the employee actually served, and not where they were mistakenly assigned. *Id*. The court finds no reversible error in the Board's analysis.[3]

---

[3] Plaintiff similarly challenges as arbitrary and capricious the Board's failure to (1) "explain why the Department refused to treat [him] in the same manner it had treated everyone assigned to the OSCE" by "assigning [him] to the U.S. Embassy or Mission in [his] intended duty station, and then assigning [him] to duties at the OSCE"; and (2) "reconcile the Department's decision to separate/transfer [him] to the OSCE with the Board's own finding that the Department was not required" to do so. Pl.'s Opp'n 43–45. However, the Board expressly and sufficiently addressed both contentions in its original decision and, accordingly, did not act arbitrarily and capriciously. *See* A.R. Pt. 6 at 27–30.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, the court grants Defendant's Motion for Partial Summary Judgment in its entirety and denies Plaintiff's Cross-Motion for Partial Summary Judgment.

Dated: October 27, 2016                                  Amit P. Mehta
                                                         United States District Judge