# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL FRITCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 15-cv-00430 (APM) |
| U.S. DEPARTMENT OF STATE, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Paul Fritch, a career Foreign Service Officer employed by Defendant U.S. Department of State, filed this lawsuit under the Administrative Procedure Act ("APA"), seeking review of the Foreign Service Grievance Board's rulings regarding two administrative grievances he filed. In his first grievance, Plaintiff complained that he was deprived of certain benefits, such as promotion consideration, during a five-year assignment to serve as Director of the Office of the Secretary General for the Organization for Security and Cooperation in Europe ("OSCE"). Defendant deemed Plaintiff ineligible for those benefits because his assignment to OSCE was done through a "separation and transfer" agreement, instead of a "detail." The Foreign Service Grievance Board ("FSGB" or "Board") affirmed the denial of Plaintiff's first grievance, and this court upheld that decision. *See generally Fritch v. U.S. Dep't of State*, 220 F. Supp. 3d 51 (D.D.C. 2016) (granting partial summary judgment in favor of Defendant on Counts I and II of the Amended Complaint).

After the FSGB denied his first grievance, Plaintiff filed a second grievance in which he argued that he was entitled to certain benefits upon his re-employment with Defendant in June 2012, as a consequence of his separation and transfer to the OSCE. The Board, however, dismissed Plaintiff's second grievance based upon the common law doctrine of claim preclusion. That ruling is the subject of the dispute now before the court.

Upon consideration of the parties' submissions and the present record, the court concludes that the Board's decision to dismiss Plaintiff's second grievance was neither arbitrary and capricious nor contrary to law. Accordingly, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

## II.   BACKGROUND

Plaintiff is a career Foreign Service Officer employed since 1991 by Defendant U.S. Department of State ("State" or "the Department"). Def.'s Mot. for Summ. J., ECF No. 46 [hereinafter Def.'s Mot.], at 6;[1] Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J., ECF No. 48 [hereinafter Pl.'s Cross-Mot.], at 3. In 2007, Plaintiff applied, and was ultimately selected, for the position of Director of the Office of the Secretary General of the OSCE. Def.'s Mot. at 6; Pl.'s Cross-Mot. at 4. After Plaintiff accepted the position, State determined that Plaintiff's assignment to OSCE was properly effectuated via a "separation and transfer" agreement, whereby Plaintiff was formally separated from State and transferred to OSCE but retained the right to resume his employment at State upon concluding his tenure with OSCE. Def.'s Mot. at 6–7; Pl.'s Cross-Mot. at 4. Importantly, Plaintiff was not "detailed" to work at OSCE, which would have resulted in Plaintiff remaining a State employee even while performing work for OSCE. *Id.*

---

[1] Citations to Defendant's Motion are to the page numbers electronically generated by CM/ECF.

Plaintiff served as Director of the Office of the Secretary General at the OSCE from September 2007 through March 2012, and was re-employed by State in June 2012. Def.'s Mot. at 7; Pl.'s Cross-Mot. at 4–5. On August 7, 2012, Plaintiff filed a grievance with State ("First Grievance").[2] Def.'s Mot. at 7; Pl.'s Cross-Mot. at 5. In his First Grievance, Plaintiff primarily argued that the Department was incorrect in treating his time at OSCE as a separation and transfer, instead of a detail. *See* Def.'s Mot. at 7–8; Pl.'s Cross-Mot. at 5. As a result of that error, he asserted, Defendant had improperly denied him consideration for promotion within the Foreign Service while working at OSCE. *See id.*; *see also* Admin. R. Part 3, ECF No. 35-4, at 22, 24, 28, 30–31.[3] Plaintiff requested, among other things, that he receive reconstituted selection boards from 2008 through 2012 for purposes of promotion consideration. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 5–6.

State denied Plaintiff's First Grievance, and Plaintiff appealed to the FSGB. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 6. In addition to the relief he requested at the agency level relating to promotion consideration, Plaintiff also sought reimbursement of housing expenses, as well as sick and home leave that he would have accrued if his assignment to OSCE had been effectuated via detail. *Id.*; *see also* Admin. R. Part 4, ECF No. 36, at 56–57. The Board denied Plaintiff's appeal of his First Grievance in its entirety. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 6–7. Plaintiff then filed a request for reconsideration. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 7.

Before the Board could rule on Plaintiff's request for reconsideration, Plaintiff filed a new grievance with State on April 21, 2014 ("Second Grievance"). *See* Def.'s Mot. at 10; Pl.'s Cross-Mot. at 9. In his Second Grievance, Plaintiff asked the Department "to address violations of

---

[2] Plaintiff was ineligible to file a grievance while an employee of OSCE and separated from State. *Id.*

[3] Citations to the Administrative Record are to the page numbers electronically generated by CM/ECF.

3

statute, regulation and published agency policy created by the Board's" finding that Plaintiff was separated from State during his time at OSCE. Admin. R., ECF No. 44, at 5; *see also id.* at 11–15. Specifically, Plaintiff alleged that the Department: (1) "failed to comply with 5 C.F.R. § 352.314(a) when it did not consider Plaintiff for promotion during the period of time when he was separated from the Department and transferred to OSCE"; (2) "acted inconsistently with Executive Order 11552 and 5 U.S.C. § 3584 when it failed to give 'due consideration' to Plaintiff's qualifications gained during his service with the OSCE when determining the position and grade to which he was assigned upon his reemployment with the Agency," instead opting "merely to reinstate him at the grade he had held prior to that service, three grades lower than the rank of the position he had held at the OSCE"; and (3) "failed to reimburse Plaintiff for housing expenses incurred when Plaintiff was separated and transferred from the Department and employed by the OSCE." Pl.'s Cross-Mot. at 9–10; *accord* Def.'s Mot. at 10.[4] Among other remedies, Plaintiff sought an upward adjustment of his grade level and reimbursement of housing expenses. Def.'s Mot. at 10–11; Pl.'s Cross-Mot. at 10.

Because the Department did not render a timely decision on Plaintiff's Second Grievance, Plaintiff "referred" his grievance directly to the FSGB, which the Board docketed as an appeal. Pl.'s Cross-Mot. at 15.[5] But before ruling on the Second Grievance, the FSGB denied Plaintiff's request for reconsideration as to his First Grievance, *see* Admin. R. Part 6, ECF No. 38, at 268–

---

[4] Plaintiff also claimed that the Department violated 5 U.S.C. § 8432(c) when it "failed to provide Plaintiff with the opportunity to make up the Thrift Savings Plan ['TSP'] contributions missed during his service with the OSCE and to reimburse him for any missed Agency basic and matching TSP contributions." Pl.'s Cross-Mot. at 9–10; *see* Def.'s Mot. at 10; *see also* Am. Compl., ECF No. 21, at 19 (seeking TSP contributions). As Plaintiff acknowledges, however, the Department has since reimbursed Plaintiff's TSP account "as required by law." Pl.'s Cross-Mot. at 17; *see id.* at 10 n.5.

[5] The Department claims that it "stayed its investigation and processing of the Second Grievance pending the Board's decision on Plaintiff's Request for Reconsideration on the First Grievance." Def.'s Mot. at 12 n.4; *see also* Admin. R. Part 6, ECF No. 38, at 197. Thus, the Department refers to Plaintiff's filing with the FSGB as an "appeal." Def.'s Mot. at 12.

4

77, which led Plaintiff to file the instant action under the APA, 5 U.S.C. §§ 701 *et seq.*, *see* Compl., ECF No. 1; *see also* Am. Compl., ECF No. 21, ¶¶ 39–46 (reasserting Counts I and II, as pled in the original Complaint). Thereafter, the Department moved to dismiss the Second Grievance arguing, among other things, that it should be dismissed under the common law doctrine of claim preclusion. *See* Def.'s Mot. at 12; Pl.'s Cross-Mot. at 15. On September 24, 2015, the Board dismissed the Second Grievance, agreeing with State that the doctrine of claim preclusion operated to bar Plaintiff's Second Grievance because it concerned the same operative set of facts as his First Grievance. *See* Def.'s Mot. at 12; Pl.'s Cross-Mot. at 16; *see also* Admin. R., ECF No. 44, at 104–13.

Following that decision, Plaintiff amended his Complaint to add claims (Counts III and IV) challenging the Board's dismissal of his Second Grievance. *See generally* Am. Compl. In Count III, Plaintiff asks the court to set aside the Board's denial of his Second Grievance as "arbitrary, capricious, and otherwise not in accordance with law." Am. Compl. at 17; *see* 5 U.S.C. § 706(2)(A). Plaintiffs offers two arguments to support this claim. First, Plaintiff alleges that he could not have filed the Second Grievance seeking the benefits denied to him following his re-employment "until it became clear that the Department would deny him those benefits." Am. Compl. ¶ 47. Thus, "in essence," he filed the Second Grievance "to enforce the Board's findings in the original grievance, not to relitigate them." *Id.* Second, Plaintiff claims that while the FSGB has applied *issue* preclusion in the past, FSGB deviated "without explanation" from prior decisions in the instant case by applying the doctrine of *claim* preclusion, which it previously had never applied to dismiss a grievance. *Id.* ¶ 48. Count IV of Plaintiff's Amended Complaint asks the court to set aside the FSGB's denial for a different reason: the failure "to consider all relevant evidence in the record and provide a reasonable explanation for its decision to dismiss the [second]

5

grievance." *Id.* at 18. Specifically, Plaintiff alleges that by dismissing the Second Grievance, the Board "refus[ed] to require that Defendant provide to Plaintiff those benefits specifically guaranteed by law to those employees in the status (re-employment following a separation/transfer to an international organization) *it* had found applied to him." *Id.* ¶ 49.

This court previously granted summary judgment for the Department on Counts I and II of the Amended Complaint, which challenged the denial of Plaintiff's First Grievance. *See generally Fritch v. U.S. Dep't of State*, 220 F. Supp. 3d 51 (D.D.C. 2016). Thereafter, the parties filed cross-motions for summary judgment challenging the remaining two counts of the Amended Complaint (Counts III and IV), both of which relate to the denial of Plaintiff's Second Grievance. The parties' cross-motions are now ripe for consideration.

## III. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court ordinarily must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But where, as here, the case involves review of a final agency action under the APA, the Rule 56 standard does not apply. *See Picur v. Kerry*, 128 F. Supp. 3d 302, 308 (D.D.C. 2015). Under the APA, the court's review "is limited to the administrative record and the grounds for decision invoked by the agency." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (internal quotation marks omitted).

The Foreign Service Act provides that decisions of the FSGB are subject to judicial review under the APA. *See* 22 U.S.C. § 4140(a); *Olson v. Clinton*, 602 F. Supp. 2d 93, 100 (D.D.C. 2009). Under the APA, a reviewing court shall set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To determine whether this standard is met, the court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dana-Farber Cancer Inst. v. Hargan*, 878 F.3d 336, 343 (D.C. Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *State Farm*, 463 U.S. at 43).

In essence, agency action must be "the product of reasoned decisionmaking" in order to survive arbitrary and capricious review. *Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012); *accord Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015). Thus, the court "will ordinarily uphold an agency's decision so long as the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (quoting *State Farm*, 463 U.S. at 43). A court, however, should not "supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U.S. at 43 (internal quotation mark omitted).

## IV. DISCUSSION

In this case, the parties have moved for summary judgment on Counts III and IV of the Amended Complaint. With respect to Count III, the Department contends that because Plaintiff could have pursued in his First Grievance the benefits to which he now claims entitlement, but failed to do so, the Board properly determined that he was precluded from pursuing those benefits in his Second Grievance. Def.'s Mot. at 14–15. Moreover, the Department asserts that this court may not consider Plaintiff's argument regarding the Board's failure to apply claim preclusion in the past, as Plaintiff failed to raise that argument in the administrative proceedings below. *Id.* at 15–16. And in any event, Defendant submits, Plaintiff has failed to cite any Board precedent conflicting with its decision to dismiss the grievance in the instant case or otherwise demonstrating that its decision to do so was arbitrary, capricious, or otherwise not in accordance with law. *Id.* at 16. With respect to Count IV, the Department argues that, because the Board dismissed the Second Grievance on the ground of claim preclusion, by definition, it did not need to reach the merits. *Id.*

Plaintiff, for his part, offers three "fundamental reasons" why the Board's dismissal of his Second Grievance should be set aside. Pl.'s Cross-Mot. at 23. First, Plaintiff claims that the Board "failed to follow governing regulations when it treated Plaintiff's Second Grievance as an appeal subject to review, rather than as a grievance to be investigated." *Id.* at 23–24. Second, Plaintiff asserts that the Board erred in finding his claims were barred by claim preclusion. *Id.* at 24. Third, Plaintiff argues that, under the principle of judicial estoppel, the Board never should have considered claim preclusion in the first place, let alone dismissed his grievance on that basis. *Id.* The court addresses these arguments in turn.

8

### A. FSGB's Treatment of Plaintiff's Second Grievance as an Appeal

The court begins with, and quickly dismisses, Plaintiff's argument that the Board's treatment of his Second Grievance as an "appeal" was "not in accordance with law." Pl.'s Cross-Mot. at 24. The court agrees with Defendant that Plaintiff failed to properly raise this issue with the Board during the administrative proceedings. *See* Def.'s Resp. to Cross-Mot. for Summ. J. & Reply in Supp. of Mot. for Summ. J., ECF No. 50 [hereinafter Def.'s Reply], at 6–9; *see also* Admin. R., ECF No. 44, at 67–78 (Plaintiff's opposition to motion to dismiss second grievance).[6] Plaintiff therefore has waived contesting that issue in this case. *See Wallaesa v. FAA*, 824 F.3d 1071, 1078 (D.C. Cir. 2016) ("It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review," particularly where, as here, "an appeal follows adversarial administrative proceedings in which parties are expected to present issues material to their case.").

### B. FSGB's Decision to Dismiss Plaintiff's Second Grievance on the Ground of Claim Preclusion

The court now turns to the heart of the matter: Plaintiff's argument that the Board erred in dismissing his Second Grievance on the ground of claim preclusion. Plaintiff challenges the Board's application of claim preclusion on two primary grounds: (1) the Board had not previously applied claim preclusion to dismiss a grievance and therefore lacked the authority to do so; and (2) the Board erred on the merits by applying claim preclusion to bar Plaintiff's claims in this case. *See* Pl.'s Cross-Mot. at 24–38. Neither argument is convincing.

---

[6] Plaintiff also ostensibly abandons this theory by failing to mention it in his reply brief. *See generally* Pl.'s Reply to Def.'s Opp'n to Cross-Mot. for Summ. J., ECF No. 53. At the very least, Plaintiff says nothing to counter the Department's opposition, such as by suggesting that he did in fact raise the issue during the administrative proceedings.

1.  *FSGB's Authority to Apply Claim Preclusion*

Plaintiff's first contention—that the Board lacked the power to apply the common law doctrine of claim preclusion—is waived because he did not raise it before the FSGB. *Compare* Pl.'s Cross-Mot. at 36–38; Pl.'s Reply to Def.'s Opp'n to Cross-Mot. for Summ. J., ECF No. 53 [hereinafter Pl.'s Reply], at 10–11, *with* Admin. R., ECF No. 44, at 67–78. When the Department moved to dismiss Plaintiff's Second Grievance, it asserted two grounds for dismissal. *See* Admin. R., ECF No. 44, at 57. First, it argued that Section 1109(a) of the Foreign Service Act, 22 U.S.C. § 4139(a),[7] deprived the FSGB of jurisdiction over Plaintiff's Second Grievance. *Id.* at 57–62. Second, and alternatively, the Department maintained that the doctrine of claim preclusion barred the Second Grievance. *Id.* at 62–63. Plaintiff challenged the first ground before the FSGB, but he never disputed the FSGB's *authority* to invoke the second. *Compare id.* at 69 ("[T]he Department has produced no case in which the Board, citing section 1109(a), has denied jurisdiction over a grievance based on a finding that it raises issues resolved in a previous grievance."), *with id.* at 70–73 (asserting, in response to the Department's claim preclusion argument, that the Second Grievance does not rely on the same underlying facts as the First). Instead, to the extent Plaintiff contested the Department's reliance on claim preclusion, he argued only that the doctrine did not apply *on the merits*. *See id.* at 70–73. He never took the position he does now, which is that the FSGB lacks the power to dismiss a grievance on claim preclusion grounds. Therefore, Plaintiff

---

[7] Section 1109(a) provides in pertinent part:

> A grievant may not file a grievance with the Board if the grievant has formally requested, prior to filing a grievance, that the matter or matters which are the basis of the grievance be considered or resolved and relief be provided under another provision of law, regulation, or Executive order . . . and the matter has been carried to final decision under such provision on its merits or is still under consideration.

22 U.S.C. § 4139(a)(1). The FSGB did not rely on this statute to dismiss Plaintiff's Second Grievance. Admin. R., ECF No. 44, at 110.

cannot pursue that argument here. *See Coburn v. McHugh*, 679 F.3d 924, 930 (D.C. Cir. 2012) ("The well-established doctrine of issue waiver . . . permits courts to decline to hear arguments not raised before the agency where the party had notice of the issue." (alteration in original) (internal quotation marks omitted)); *see also Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013) (explaining that the standard for waiver in administrative law cases focuses on whether the plaintiff raised the "specific argument" before the agency, and "not merely the same general legal issue"); *Pacific Ranger, LLC v. Pritzker*, 211 F. Supp. 3d 196, 224 (D.D.C. 2016) (characterizing that standard as "demanding").

Even if Plaintiff could raise that argument now, the contention lacks merit. Plaintiff makes his assertion that the Board did not have the authority to invoke claim preclusion most clearly in his reply brief. Citing the D.C. Circuit's decision in *North Carolina v. FERC*, 112 F.3d 1175 (D.C. Cir. 1997), he insists that claim preclusion "cannot preclude a party from raising claims under circumstances defined by the legislature." Pl.'s Reply at 10 (citing *FERC*, 112 F.3d at 1185). Here, Plaintiff suggests that the controlling statute is 22 U.S.C. § 4134(a), which provides that a Foreign Service Officer may file a grievance within two years from the date the Officer discovers the matter giving rise to the grievance. Pl.'s Reply at 11. Drawing a parallel to the statute at issue in *North Carolina v. FERC*, Plaintiff asserts that "[w]here Congress has not required the Officer to include in a grievance all possible claims, including those that have not yet ripened into a dispute, the Board cannot impose such a requirement under the guise of claim preclusion." *Id.*

Plaintiff's reliance on *North Carolina v. FERC* is misplaced. In that case, the state of North Carolina sought review of a decision "to amend a FERC license under which a power project was operated within Lake Gaston on the Roanoke River" by Virginia Power and Electric Company. 112 F.3d at 1180. The amended license would have allowed Virginia Beach to build an intake

11

structure within the project's boundaries and withdraw water from the Lake as a part of a pipeline project. *Id.* Because Lake Gaston is located primarily in North Carolina, North Carolina intervened in the license amendment proceedings and petitioned the Commission to stay its proceeding until Virginia Power obtained a water quality certification from North Carolina pursuant to section 401(a)(1) of the Clean Water Act, 33 U.S.C. § 1341(a)(1). *Id.* at 1180–82. After the Commission denied the petition, North Carolina moved for rehearing. *Id.* at 1182. In denying the motion, the Commission held, among other things, that North Carolina waived its Section 401 certification right by failing to assert it during an earlier proceeding involving Virginia Beach's application for a dredge-and-fill permit. *See id.* at 1182–83. North Carolina filed suit under the APA, arguing in part that FERC violated section 401(a)(1) of the Clean Water Act by issuing an amended license without receiving a water quality certification from North Carolina. *Id.*

After finding that North Carolina did not waive its certification right under the plain language of Section 401(a)(1), the D.C. Circuit addressed the agency's alternative grounds for affirmance, one of which was the common law doctrine of claim preclusion. *Id.* at 1183–85. The Circuit rejected the Commission's invitation to "read th[e] doctrine [of claim preclusion] into Section 401(a)(1)," which "clearly provide[d] that a Federal license or permit may not be granted 'until the certification required by [the statute] has been obtained or has been *waived*' *as a result of a state's 'refus[al] to act on a request' for such in a timely manner*." *Id.* at 1185 (third alteration in original) (emphasis added) (quoting 33 U.S.C. § 1341(a)(1)). The court reasoned that there was "no room for the doctrine of claim preclusion in such a precisely worded provision," and to hold otherwise would require the court "to usurp the legislative function." *Id.*

12

In this case, Plaintiff has pointed to no similar "precisely worded" statutory provision. Instead, the statute cited by Plaintiff, 22 U.S.C. § 4134(a), simply states *when* a grievance must be filed, *see id.* (providing that a grievance "is forever barred . . . unless it is filed with the Department not later than two years after the occurrence giving rise to the grievance"), and is thus more akin to a statute of limitations. Unlike in *North Carolina v. FERC*, there is nothing inherently inconsistent about the Board applying the doctrine of claim preclusion in the face of a statute that does no more than set a limitations period within which to file a grievance. The Board therefore did not act arbitrarily by relying on the doctrine of claim preclusion to dismiss the Second Grievance.[8]

2. *FSGB's Substantive Application of Claim Preclusion*

As was the case before the Board, Plaintiff's primary argument here is that the FSGB wrongly applied the doctrine of claim preclusion to his case. *See* Pl.'s Cross-Mot. at 2, 25–27. For the reasons stated below, the court finds no error with the Board's decision.[9]

Under the doctrine of claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of

---

[8] Plaintiff also seems to advance a different contention as to the impropriety of the Board relying on claim preclusion, but this argument is far from clear. Plaintiff appears to assert that, because the Board had not before used claim preclusion to dismiss a grievance, the Board's decision to apply that doctrine to him in this case was arbitrary and capricious. *See* Pl.'s Cross-Mot. at 36–38. Ultimately, however, the court does not address this argument. To the extent that Plaintiff advances it, he does so only in refuting the Department's contention that he waived contesting the agency's authority to rely on claim preclusion. He does not, however, explain *why* the Board's first-time reliance on claim preclusion was arbitrary and capricious, or cite any authority in support of that proposition. Thus, not having added any flesh to the bone of that argument, the court declines to consider it. *Cf. Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments. Even if the briefing were sufficient to raise this issue, it certainly is not persuasive enough to carry [petitioner's] burden of showing that the agency's analysis was arbitrary and capricious." (citations and internal quotation marks omitted)).

[9] The court here affords no deference to the Board's application of the doctrine of claim preclusion, as "[an] agency's interpretation of judicial precedent is entitled to no deference." *Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131, 137 (D.D.C. 2016) (citing *New York New York, LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002)).

13

competent jurisdiction." Pl.'s Cross-Mot. at 25 (quoting *Havens v. Mabus*, 759 F.3d 91, 97–98 (D.C. Cir. 2014)). Here, as in many cases, the challenge is determining whether two cases involve the "same claim." *See id.* at 26; *see, e.g.*, *Nat'l Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008). The answer to this question turns on whether both cases "share the same nucleus of facts." *Nat'l Res. Def. Council*, 513 F.3d at 261.

Plaintiff contends that that this "critical test" is not satisfied here, in part because the claims raised in his First and Second grievances are "distinct." Pl.'s Cross-Mot. at 26–27. Specifically, Plaintiff argues that the "subject of [his] First Grievance . . . was the denial of promotion eligibility while he was assigned to OSCE, which he alleged was due to the Department's effectuating the assignment *in 2007* by separation/transfer." *Id.* at 28. By contrast, Plaintiff contends, the claim in his Second Grievance "did not concern the benefits to which he would have been entitled during a detail to the OSCE" and instead challenged "the Department's failure to award him the benefits to which he was entitled *after he was re-employed*, in light of the Board's decision rejecting his challenge to his separation/transfer." *Id.* at 28–29. Thus, Plaintiff attempts to distinguish the two claims based on the purported time when each arose.

Like the Board, the court finds that distinction unconvincing. While Plaintiff emphasizes that his First Grievance concerned benefits he should have received *during* his assignment to OSCE, the benefits that he claims he was entitled to *after* his assignment in his Second Grievance also arise out of the same operative set of facts: the assignment itself. Both grievances rise and fall on the question whether Plaintiff's 2007 assignment was a "separation and transfer" or a "detail." No other facts are relevant. Thus, as the Board properly recognized, both sets of claims "flow from the separation/transfer action." Admin. R., ECF No. 44, at 112.

14

Plaintiff offers a host of arguments to avoid the consequence of his splitting of claims, but none are convincing. First, he asserts that, because "he was entitled to certain comparable but legally distinct benefits after his return from his separation/transfer to OSCE," the Second Grievance differs from the First. *See* Pl.'s Cross-Mot. at 27. That Plaintiff sought "comparable but legally distinct benefits" in his Second Grievance, however, does not entitle Plaintiff to "get a second bite at th[e] same apple." *See Nat'l Res. Def. Council*, 513 F.3d at 261. Rather, as Plaintiff himself recognizes, "a party cannot escape application of the doctrine by raising a different legal theory or seeking a different remedy in the new action that was available to [him] in the prior action." Pl.'s Cross-Mot. at 26 (alteration in original) (quoting *Sluss v. Renaud*, No. 15-cv-1475, 2016 WL 4487729, at *3 (D.D.C. Aug. 25, 2016)). Accordingly, the fact that Plaintiff sought "legally distinct" benefits as part of his Second Grievance does not save him.

Next, Plaintiff argues that the Board's application of claim preclusion was improper because the claims he raised in the Second Grievance could not have been included in his First Grievance. *Id.* at 31. The reason he could not grieve the claims simultaneously, Plaintiff states, is that the second contention—that he was entitled to benefits even as a separated employee under Executive Order 11552 and 5 U.S.C. § 3584—could not be asserted until he officially "returned" to the agency and was "re-employed." *Id.* That assertion is difficult to follow. Plaintiff points to no valid impediment that prevented him from asserting alternative theories to his right to benefits when he filed his First Grievance.[10] Put differently, Plaintiff could have argued, without

---

[10] Plaintiff does cite the Department's failure to "take[] the position that it would never comply with the statute and Executive Order" as an impediment to his ability to assert these claims in his First Grievance, *see* Pl.'s Cross-Mot. at 31–32, but that argument falls flat. As Plaintiff acknowledges, the statute and executive order that he cites would have required the Department to "take[] his OSCE service into account in determining the benefits to which he should have been entitled upon his re-employment" in June 2012, *before* he filed his First Grievance. *See id.* at 32. Thus, the Department's failure to expressly state its position as to the applicability of the statute and executive order posed no hindrance to Plaintiff's ability to assert entitlement to benefits. *See* Def.'s Reply at 17.

15

inconsistency, that he was in fact detailed to the OSCE, but even if separated and transferred, he still was entitled to certain benefits upon his return. The only difference between the First and Second Grievance is that, before he filed the Second Grievance, the Board determined that he was on separated status while at the OSCE. But, as the Board explained, its decision resolving Plaintiff's status "did not create any new facts," but simply "'left undisturbed' the agency's original decision to separate/transfer [Plaintiff] to the OSCE." Admin. R., ECF No. 44, at 112. That is, the Board's decision had no bearing on additional arguments Plaintiff *could have* made in his First Grievance concerning the Department's alleged failure "to award him certain benefits he felt he should have received upon his re-employment with the agency in June 2012." *Id.* at 111. Plaintiff did not make those arguments, and the Board therefore properly applied the doctrine of claim preclusion.

Additionally, Plaintiff challenges the Board's decision as arbitrary and capricious because "it reveals considerable confusion" over whether its "decision [wa]s predicated upon collateral estoppel or claim preclusion." *See* Pl.'s Cross-Mot. at 32; Pl.'s Reply at 7–8. The court rejects this argument. True, the Board repeatedly characterized the doctrine it was applying as "Collateral Estoppel (Claim Preclusion)," *see* Admin. R., ECF No. 44, at 110–12, even though collateral estoppel refers to *issue* preclusion, *see generally Bailey v. Fulwood*, 793 F.3d 127, 136 n.5 (D.C. Cir. 2015). But in dismissing Plaintiff's Second Grievance, the Board unquestionably applied the elements of claim preclusion. For example, the Board held:

> [Plaintiff] was obligated under the doctrine of collateral estoppel (claim preclusion), therefore, to bring all of his claims that relate to the same series of events during the first grievance. [Plaintiff] is precluded from making additional claims in a new grievance, based on those same facts that form the basis of the first grievance, after the Board reached a decision denying that grievance. To permit this would be tantamount to seeking a second Board reconsideration of

16

> the first grievance, without [Plaintiff] having met the criteria for
> reconsideration as set forth in 22 U.S.C. 4136(9) and CFR 910.1.

*Id.* at 111. Indeed, other than mistakenly characterizing claim preclusion as "collateral estoppel" instead of "res judicata," there is no indication whatsoever that the Board confused the two doctrines. *See, e.g.*, *id.* at 110–11 ("We are not convinced that the two *claims* are separate and distinct . . . ." (emphasis added)); *id.* at 112 ("[Plaintiff] had the opportunity, and even the obligation . . . to raise during his argument of his first grievance *any and all claims* he had concerning Department violations of any kind that he deemed to flow from the separation/transfer action. *As he failed to raise these claims* . . . he is barred from filing a new grievance now, based on the same underlying facts." (emphasis added)).

Finally, the court's conclusion that the Board did not improperly apply the doctrine of claim preclusion resolves Plaintiff's contention as to Count IV, which is that the Board failed to consider the merits of his Second Grievance. *See* Am. Compl. ¶ 49; Pl.'s Cross-Mot. at 2–3. Because the Board found the Second Grievance to be barred under the doctrine of claim preclusion, it appropriately dismissed the Second Grievance without considering its merits. *Cf. Nat'l Res. Def. Council*, 513 F.3d at 261. That is how claim preclusion works.

### C. FSGB's Rejection of Plaintiff's Judicial Estoppel Argument

That leaves Plaintiff's argument concerning the Board's rejection of his plea to apply the equitable principle of judicial estoppel to prevent the Department from seeking dismissal on claim preclusion grounds. Plaintiff contends that Defendant pulled a bait and switch. He maintains that when the Department opposed his request for reconsideration of the First Grievance, the Department argued that the Board should not consider Plaintiff's claims regarding Executive Order 11552 and 5 U.S.C. § 3584—one of the bases for his Second Grievance—in part because "they did not concern the claims raised in the First Grievance," and "in any event . . . were fully

addressed in the Second Grievance." Pl.'s Cross-Mot. at 43 (citing Admin. R. Part 6, ECF No. 38, at 197). Having taken that position in the First Grievance proceedings, Plaintiff maintains that the Department was foreclosed—or judicially estopped—from subsequently arguing in the Second Grievance proceedings that Plaintiff could have brought his claims all at once. *See id.* at 44. Thus, in the administrative proceedings below, Plaintiff urged the Board not to invoke claim preclusion on the ground of judicial estoppel. *See id.* at 38; *see also* Admin. R., ECF No. 44, at 73–76.

The Board, however, declined to apply that equitable doctrine. *See* Admin. R., ECF No. 44, at 112–13. In doing so, the Board relied on the test set out in *New Hampshire v. Maine*, 532 U.S. 742 (2001), which articulates three factors that courts generally consider when determining whether to apply judicial estoppel in a particular case:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*See* Admin. R., ECF No. 44, at 113 & n.4 (quoting *Moses v. Howard Univ. Hosp.*, 567 F. Supp. 2d 62, 66 (D.D.C. 2008)); *Moses*, 567 F. Supp. at 66 (quoting *New Hampshire*, 532 U.S. at 750–51). Applying this test, the Board ultimately found "no evidence that any of these three factors appl[ied], that the Department abused the legal system by any of the arguments it made in this case, or that its actions met any other prerequisites that might be used in determining applicability of this doctrine." Admin. R., ECF No. 44, at 113. The Board also concluded that the Department's "request that the first grievance be remanded if the Board decided to rule on the merits of new claims that [Plaintiff] made in his [motion to reconsider], on which the agency had not had a chance

18

to be heard, [was] not contrary or inconsistent with its previous position." *Id.* Instead, the Board reasoned that the Department's position had been "both consistent and persuasive that the underlying facts are the same in both grievances." *Id.*

The court finds no error in the Board's ruling or its reasoning. Having closely reviewed all of the parties' relevant submissions to the Board during both proceedings, the court concludes that the Department's position in its opposition to Plaintiff's request for reconsideration of the First Grievance was not "clearly inconsistent" with the position it took later in its motion to dismiss the Second Grievance. As Defendant correctly points out, its opposition simply argued that Plaintiff's claims under the Executive Order and relevant statute "had not been asserted during the proceedings on the merits, and therefore could not justify reconsideration of the Board's decision." Def.'s Reply at 24; *cf.* Pl.'s Cross-Mot. at 42–43 (noting that, with respect to his argument regarding Executive Order 11552 and 5 U.S.C. § 3584, the Board held that Plaintiff was "presenting this as a new argument which, . . . [the Board] will not consider on the merits or as grounds for reconsideration" (quoting Admin. R. Part 6, ECF No. 38, at 275)). The Department's position in its motion to dismiss the Second Grievance is premised on a similar ground: Plaintiff's failure to assert these claims when he filed the First Grievance. *See* Admin. R., ECF No. 44, at 62–63. Moreover, as the Board recognized, there is no inconsistency in the Department's position that the Board remand the first grievance to the agency if the Board denied the request for reconsideration in all other respects, but allowed Plaintiff to pursue the new claims he raised for the first time in his request for reconsideration. *See id.* at 113. Parties frequently present alternative arguments, and there is nothing novel about the Department's decision to do so here.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 46, is granted, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 49, is denied. A separate Order accompanies this Memorandum Opinion.

Dated: March 14, 2018

Amit P. Mehta
United States District Judge